15 February 2000

No. 2--98--1124

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF      ) Appeal from the Circuit Court

ILLINOIS,                       ) of Du Page County.

                                )

Plaintiff-Appellee,        )

                                )

v.                           ) No. 98--CF--26

                                )

QUINCY L. LOCKETT,              ) Honorable

                                ) Michael J. Burke,

Defendant-Appellant.       ) Judge, Presiding.

_________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

Following a bench trial, the defendant, Quincy L. Lockett, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402 (a)(2)(A) (West 1998)) and resisting a peace officer (720 ILCS 5/31--1(a) (West 1998)).  The trial court sentenced him to 24 months' probation and 100 days in jail.  The defendant appeals, contending that the trial court erred in denying his motions 
in
 
limine
 to quash his arrest and suppress evidence.

At the hearing on the defendant's motions to quash arrest and suppress evidence, the defendant testified that he was arrested on January 5, 1998, around 10:30 p.m.  At that time, he lived at 585 West Lynne Road, apartment 10, in Lombard, Illinois.  He had been out walking prior to his arrest.  When he returned to his apartment building, he went through a common entrance door and saw a uniformed officer standing at another door.  When the defendant was about four feet from the officer, the officer asked the defendant what he was looking for and the defendant responded, "no one."  The defendant then turned around and began to go back out the door.  However, the defendant heard footsteps behind him and began to run.  The defendant claimed that the officer then tackled him, wrestled him to the ground, and sprayed mace in his face.  The officer then walked the defendant back to the squad car and told him he was under arrest.  The officer then searched the defendant's person and found a packet of drugs in his pocket.

Du Page County Sheriff's Deputy Juan Marquez testified that he responded to a complaint that loud noise was coming from apartment 18 at the Willow Lakes Apartments on the evening in question.  Marquez noted that apartment 18 was on the second floor and apartment 10 was on the third floor.  Marquez was familiar with apartment 18 because one week earlier at the same apartment there had been a gang fight, which resulted in an aggravated battery.  Deputy Marquez stated that, while he was speaking with the occupants of apartment 18 and telling them to turn down the music, the defendant walked by Marquez and passed the threshold of the apartment.  The occupant of the apartment then stopped the defendant from entering all the way and told the defendant to leave.  The defendant stated that he wanted to talk to someone.  The occupant again asked the defendant to leave.  The defendant then turned around and asked Marquez who he was.  Deputy Marquez advised the defendant that he was a police officer and asked the defendant to leave.  The defendant walked out of the apartment and stood in the hallway in front of the apartment door.  Marquez again asked the defendant to leave, but the defendant refused.  Marquez then told the defendant that he would walk him home.

Deputy Marquez further testified that, after he finished addressing the occupant of apartment 18, he turned around and asked the defendant where he lived.  The defendant told the deputy that he lived next door.  Marquez noticed that the defendant's pupils were dilated, he wavered while talking, and he smelled of alcohol.  Marquez concluded that the defendant was either drunk or high on something.  When the defendant started to walk away down a flight of stairs, Marquez followed behind the defendant.  As they walked down the stairs, Marquez asked the defendant for his name and identification.  The defendant refused to give his name and told the deputy that he did not have any identification.  As the defendant traversed the stairs, it appeared to Marquez that the defendant was trying to hide his left hand from view.  The defendant was reaching across his body and holding on to the left rail with his right hand.

When they got to the bottom of the stairs, the defendant turned to exit and that placed Deputy Marquez in front of the defendant.  At that point, the deputy again asked the defendant for identification, but the defendant did not have any.  Marquez explained that he stopped at the exit because he thought that the defendant lived in the next-door apartment and yet they were leaving the building.  As the defendant was standing in front of him, Marquez noticed that the defendant was hiding his left hand behind him.  When the deputy asked to see the defendant's hands, the defendant showed the deputy the defendant's empty right hand.  Fearing that the defendant had a weapon in his left hand, Marquez asked the defendant what was in his left hand.  When the defendant refused to show it, Marquez reached for it, but the defendant moved his hand away.  Marquez attempted "to control" the defendant's left hand.  At that moment, the defendant made a sudden movement toward his face with his left hand.  Marquez thought that the hand was coming toward Marquez's face and that he was being attacked.  Marquez deflected the defendant's hand, and an object bounced off the defendant's cheek and rolled down his shoulder.  The object was a white rock substance.  Marquez thought that it was cocaine.  Before deflecting the defendant's hand, Marquez had not touched the defendant at any time.     

When the defendant realized that he had lost control of the white object, he pushed Marquez and lunged at him.  Marquez then brought the defendant face down to the ground and informed him that he was under arrest.  As the defendant continued to struggle, Marquez reached for his handcuffs.  At that moment, the defendant escaped from Marquez's grasp and ran for the exit.  Marquez, however, was able to apprehend the defendant, and Marquez again advised the defendant that he was under arrest.  Marquez also informed him that if he continued to struggle Marquez would spray him with mace.  Despite this warning, the defendant again escaped and tried to open a door to an inner corridor.  However, Marquez was able to place his foot against the door to prevent the defendant from opening it all the way.  Marquez then repeated his warning that if the defendant continued to struggle the deputy would spray him with mace.  Thereafter the defendant continued to resist, and Marquez sprayed him with mace.  Marquez then handcuffed the defendant and placed him in a squad car.

Deputy Marquez testified on cross-examination that he noticed that the defendant had his left hand clenched when he walked down the stairs.  When they both reached the bottom of the stairs, the deputy asked to see what was in the defendant's left hand, but the defendant refused to show it.  Out of concern for his safety, the deputy then reached for the defendant's left hand to control it.  At that point, the defendant made a sudden move in an attempt to swallow the object in his left hand.  Marquez acknowledged that he did not note in his police report that he felt that the defendant was trying to strike him when he made the sudden movement.  He explained, however, that this was because he realized after the fact that the defendant's intention was to swallow the item.  The deputy also explained that he stopped the defendant to talk to him at the bottom of the stairs because he thought that the defendant lived next door yet they were leaving the building.

After hearing the above-mentioned evidence, the trial court denied the defendant's motions to quash arrest and suppress evidence.  In so doing, the court noted that the two witnesses had testified to completely different versions of the incident.  The court resolved the credibility issue in favor of Deputy Marquez, finding that his testimony was detailed, clear, and credible.  The court noted that the deputy gave the defendant two opportunities to leave the area before offering to escort him out.  At the time, the defendant appeared drunk or high and was hiding something from the deputy.  No seizure occurred at the bottom of the stairs because the deputy never grabbed the defendant and only asked to see what was in the defendant's hand for his own safety.  At that time, the deputy believed that the defendant was raising his right hand to strike the deputy.  In the process of attempting to ward off the blow, an item that appeared to be a piece of rock cocaine fell to the ground.  At that point, the deputy had probable cause to arrest the defendant.

On appeal, the defendant contends that the trial court erred in denying his motions to suppress.  He maintains that the encounter between the defendant and Deputy Marquez was not consensual after the point that the defendant refused to provide his name and identification.  The defendant contends that the encounter was not justified as a valid investigative 
stop pursuant to 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), or as a legitimate exercise of a "community care-taking function" pursuant to 
People v. Murray
, 137 Ill. 2d 382 (1990).

Generally, a trial court's ruling on a motion to quash arrest and suppress evidence will not be overturned on review unless it is manifestly erroneous.  
People v. Dilworth
, 169 Ill. 2d 195, 201 (1996).  However, 
de
 
novo
 review is appropriate when neither the facts nor the credibility of the witnesses is questioned.  
People v. James
, 163 Ill. 2d 302, 310 (1994).  If the trial court's determination of credibility in favor of a police officer is not against the manifest weight of the evidence, a reviewing court will conduct a 
de
 
novo
 review of the defendant's legal challenge under that officer's version of the events.  
People v. Gonzalez
, 184 Ill. 2d 402, 412 (1998).  As the movant, the defendant has the burden of proof to establish that a search and seizure are unlawful or impermissible.  
People v. Scott
, 249 Ill. App. 3d 597, 600-01 (1993).

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  The touchstone of any analysis of an alleged intrusion depends on balancing the public interest against the individual's right to be free from arbitrary interference by law officers.  
Gonzalez
, 184 Ill. 2d at 413.  A law enforcement officer does not violate the fourth amendment's guarantee against unreasonable search and seizure by approaching a person and questioning him or asking him to provide identification.  
Florida v. Royer
, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983); 
People v. Billingslea
, 292 Ill. App. 3d 1026, 1029 (1997); 
People v. Anaya
, 279 Ill. App. 3d 940, 944 (1996).  

Our supreme court in 
People v. Murray
, 137 Ill. 2d 382 (1990), noted that there are three tiers of police-citizen encounters.  One tier involves an arrest of a citizen, an action that must be supported by probable cause; otherwise, the fourth amendment prohibition against unreasonable seizures is violated.  
Murray
, 137 Ill. 2d at 387.  

The next tier involves a stop pursuant to 
Terry
.  
Murray
, 137 Ill. 2d at 387.  In 
Terry
, the United States Supreme Court recognized a limited exception to the probable cause requirement that, under appropriate circumstances and in the appropriate manner, allows a police officer to briefly detain a person for investigatory purposes and also, if necessary for safety, to conduct a limited protective search of that person for weapons.  
In re J.J.
, 183 Ill. App. 3d 381, 384 (1989).  An officer may make a valid 
Terry
 stop if, based on all the facts and circumstances, he had a reasonable and articulable suspicion that the suspect is committing, has committed, or is about to commit a crime.  
People v. Ertl
, 292 Ill. App. 3d 863, 868 (1997).  An objective standard applies to a review of a 
Terry
 stop, so that a police officer must be able to point to specific and articulable facts that, taken together from the rational inferences from those facts, reasonably warrant the stop.  
People v. Long
, 99 Ill. 2d 219, 228 (1983).  Facts and circumstances that, if viewed independently, might constitute innocent behavior may provide reasonable suspicion when considered in their entirety to justify a 
Terry
 stop.  
People v. Crest
, 188 Ill. App. 3d 768, 773 (1989).

The third tier of police-citizen encounters does not involve coercion or detention and is known as "the community care-taking function or public safety function."  
Murray
, 137 Ill. 2d at 387. A proper exercise of this function does not amount to a seizure for fourth amendment purposes because a seizure occurs only when an officer, " 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' "  
Murray
, 137 Ill. 2d at 387-88, quoting 
Terry v. Ohio
, 392 U. S. 1, 19 n. 16, 20 L. Ed. 2d 889, 905 n.16, 88 S. Ct. 1868, 1879 n. 16 (1968).  Four examples of circumstances that may be indicative of a seizure are as follows: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of a citizen; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled.  
Murray
, 137 Ill. 2d at 390.  " 'In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.' [Citation.]"  
Murray
, 137 Ill. 2d 390-

91.  In order to determine whether a particular encounter constitutes a seizure or a stop for fourth amendment purposes, a court must consider all the surrounding circumstances of the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter.  
Florida v. Bostick
, 501 U.S. 429, 444, 115 L. Ed. 2d 389, 405, 111 S. Ct. 2382, 2391 (1991).

In 
Murray
, the defendant was sitting in the driver's seat of a legally parked car.  
Murray
, 137 Ill. 2d at 384.  A police officer knocked on the window of the vehicle and asked the defendant to exit and produce his identification.  
Murray
, 137 Ill. 2d at 384.  The defendant stepped from the car and handed the officer his license.  
Murray
, 137 Ill. 2d at 385.  However, he left the car door open when he stepped out, and the officer was able to observe a handgun on the floor of the car.  
Murray
, 137 Ill. 2d at 385.  The officer confiscated the weapon and arrested the defendant.  
Murray
, 137 Ill. 2d at 385.  In holding that the officer's initial encounter with the defendant did not amount to a seizure prior to the discovery of the weapon, the supreme court found it significant that there was no use of physical force or show of authority.  
Murray
, 137 Ill. 2d at 390.  The court also noted that the officer requested rather than ordered the defendant to exit the vehicle and the fact that the defendant could have declined this request did not transform the consensual encounter into a seizure.  
Murray
, 137 Ill. 2d at 393.

In 
Billingslea
, a police officer saw the defendant and two other men talking to the occupants of a parked car in a "high narcotics area."  
Billingslea
, 292 Ill. App. 3d at 1028.  The officer asked the defendant to come toward him.  
Billingslea
, 292 Ill. App. 3d at 1028.  As the defendant approached the officer, the officer saw a "bundle" in the defendant's waist area and that the defendant had his hands in his pocket.  
Billingslea
, 292 Ill. App. 3d at 1028.  At that point, the officer ordered the defendant to keep his hands where the officer could see them.  
Billingslea
, 292 Ill. App. 3d at 1028.  After taking a couple of steps in the officer's direction, the defendant took an evasive step away.  
Billingslea
, 292 Ill. App. 3d 1028.  The officer, who was about five or six feet away, moved to position himself in front of the defendant so that the defendant could not flee.  
Billingslea
, 292 Ill. App. 3d at 1028.  The defendant then removed a handgun from his waistband and threw it into the snow, attempting to conceal it.  
Billingslea
, 292 Ill. App. 3d at 1028.  The trial court denied the defendant's motion to quash arrest and suppress evidence, finding that the officer's actions did not amount to a stop and that he seized the weapon in plain view.  
Billingslea
, 292 Ill. App. 3d at 1028-29.

On appeal, the court in 
Billingslea
 found that the officer's actions in stepping to block the defendant while telling him to come over amounted to a show of force before the defendant threw the gun to the ground.  
Billingslea
, 292 Ill. App. 3d at 1030.  However, the court continued its analysis and held that the defendant was not seized for purposes of the fourth amendment because he ignored the show of authority by choosing not to submit to the officer's orders.  
Billingslea
, 292 Ill. App. 3d at 1030, citing 
California v. Hodari D.
, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991) (where the Court held that assuming the officer's pursuit of the defendant constituted a show of authority, the defendant was not seized in the absence of either physical touching by the officer or submission to the officer's order).  Instead, the defendant in 
Billingslea
 turned away, reached for an object in his waistband, and threw it to the ground.  
Billingslea
, 292 Ill. App. 3d at 1030.  In addition to finding that no seizure occurred because of the lack of submission on the part of the defendant, the court further found that the officer possessed sufficient articulable facts to justify a 
Terry
 stop given that it was a high-crime area, the defendant had a bulge at his waistband, and he took an evasive step away from the officer.  
Billingslea
, 292 Ill. App. 3d at 1031.

Here, we find that 
Murray
 and 
Billingslea
 provide ample authority to support the trial court's denial of the defendant's motions to suppress.  First, we note that Deputy Marquez's actions were justified pursuant to the standard enunciated in 
Terry
 for brief investigative detentions.  Marquez first observed the defendant commit what the State characterizes as an offense of criminal trespass to a residence when he entered apartment 18, apparently without authority, and then remained there despite being asked to leave twice by the occupant.  The defendant finally left when he was requested to do so by Marquez.  However, instead of leaving the area, the defendant remained just outside the door of apartment 18.  Deputy Marquez then noticed that the defendant smelled of alcohol and appeared to be under the influence of alcohol or drugs.  Marquez also knew that the same apartment had been the site of gang-related activity involving an aggravated battery.  As the deputy and the defendant traversed the stairs, the deputy noticed that the defendant was hiding something in his left hand.  The deputy testified that, at the bottom of the stairs, he feared that the defendant might be concealing a weapon in his hand.  Under the totality of these circumstances, we find that Deputy Marquez possessed a reasonable and articulable suspicion that the defendant was about to commit a crime, and it was reasonable for the deputy to briefly detain the defendant to determine whether he was concealing a weapon in his left hand and to determine whether  the defendant resided at the building.

The defendant argues that the State raised a new theory on appeal by arguing that the defendant's conduct in entering apartment 18 amounted to a crime.  We do not agree that this argument raised a new "theory."  We note that during its closing argument the State did raise the defendant's peculiar and unauthorized entry into apartment 18 as a factor supporting the deputy's actions.  Accordingly, we reject the defendant's claim that the State cannot rely on the defendant's conduct in entering the apartment to support the trial court's ruling.  The defendant also argues that Deputy Marquez had to subjectively believe that the defendant had committed a crime in entering apartment 18.  Otherwise, the defendant continues, the State was not entitled to rely on the defendant's entry to support the deputy's actions.  However, we note that under 
Terry
 an objective standard applies:  "would the facts available to the officer at the moment of the seizure or the search 'warrant 
a man of reasonable caution
 in the belief' that the action taken was appropriate?"  (Emphasis added.)  
Terry
, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.  Here, the record clearly establishes that the facts known to Deputy Marquez would have warranted a man of reasonable caution to believe that the actions taken with respect to the defendant were appropriate. 

The case law relied upon by the defendant is distinguishable.  For example, in 
People v. Rainey
, 302 Ill. App. 3d 1011 (1999), the issue was whether police officers had probable cause to arrest and not whether they had a reasonable suspicion to justify a 
Terry
 stop where, upon the approach of the officers, the defendant placed something in his mouth that could have been a piece of gum.  
Rainey
, 302 Ill. App. 3d at 1015.  Unlike the officers in 
Rainey
, Deputy Marquez was confronted with a great deal more suspicious behavior on the part of the defendant.  The defendant in the instant case had refused to leave an apartment despite being told to leave, he appeared to be under the influence of alcohol or drugs, and he surreptitiously descended the stairs with a clenched fist. 

The record further establishes that, regardless of whether Deputy Marquez had sufficient facts to justify a 
Terry
 stop, the defendant was not seized until after he dropped cocaine off his cheek onto his shoulder in plain view of Marquez.  The defendant voluntarily approached Deputy Marquez and asked who he was despite the fact that the deputy was in uniform.  The defendant was free to leave, and, in fact, a number of times it was requested that he do so.  Yet, the defendant remained in the deputy's presence.  As part of an appropriate exercise of his community care-taking or public safety function, the deputy asked the defendant where he lived, and the deputy told the defendant he would walk him home.  It was also appropriate for the officer to ask for the defendant's name and identification.  See 
Murray
, 137 Ill. 2d at 393 (encounter was not characterized as a seizure where officer requested, rather than ordered, the occupant of a car to exit and show his license).  

By the time they reached the bottom of the stairs, Deputy Marquez had noticed that the defendant was hiding something in his left hand, and the deputy feared that it was a weapon.  The defendant claims that Deputy Marquez blocked his path at the bottom of the stairs and that this amounted to a seizure.  We disagree, however, with the defendant's characterization of the facts on this point.  The record does not indicate that the deputy blocked the defendant's path.  Instead, it merely shows that the deputy ended up in front of the defendant because the defendant turned to exit the building.  At that time, the deputy was surprised that they were going to leave the building because the defendant had told him that he lived in the next apartment.  The deputy understandably  asked the defendant for identification once again.  We find no seizure in this request.  The deputy then asked to see what was in the defendant's left hand.  When the defendant refused, Deputy Marquez reached for the defendant's hand but did not touch him.  Assuming that the deputy's action in reaching for the defendant's hand was a show of force similar to the officer in 
Billingslea
 who attempted to block the defendant's path when he made an evasive step, we find, as did the court in 
Billingslea
, that the defendant was not seized given that he chose not to submit to the assertion of authority.  See 
Billingslea
, 292 Ill. App. 3d at 1030.  Instead, the defendant made a sudden movement toward his face in an effort to swallow an item of contraband.  In the process, Marquez thought that he was being attacked, and the defendant's arm was deflected, leaving the item in plain view.  Under the circumstances, we find that the defendant was not seized until Deputy Marquez attempted to bring the defendant to the ground and inform him that he was under arrest.  Accordingly, Deputy Marquez's discovery of the cocaine was not the result of a search or seizure of the defendant.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

HUTCHINSON and GALASSO, JJ., concur.