No.  2--99--0839

30 November 2000

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF     ) Appeal from the Circuit Court

ILLINOIS,                      ) of Ogle County.

                               )

Plaintiff-Appellant,      )

                               ) 

v.                             ) No. 99--DT--18

                               )

NICOLE A. MANDERS,             ) Honorable

                               ) Michael T. Mallon,

Defendant-Appellee.       ) Judge, Presiding.

JUSTICE GALASSO delivered the opinion of the court:

On January 26, 1999, defendant, Nicole A. Manders, was charged with driving under the influence (DUI), in violation of section 11-

-501(a)(4) of the Illinois Vehicle Code (Code) (625 ILCS 5/11--

501(a)(4) (West 1998)).  Subsequently, defendant filed a petition to rescind the statutory summary suspension of driving privileges (petition) and a motion to suppress evidence.  On July 19, 1999, after an evidentiary hearing on both matters, the trial court granted both defendant’s petition and her motion to suppress evidence.  On the same date, two separate orders granting the petition and the motion to suppress were filed.  On July 21, 1999, the State filed a notice of appeal, and it subsequently filed an amended notice of appeal on November 22, 1999.  The certificate of impairment was filed contemporaneously with the State’s brief.

On appeal, the State raises three issues: (1) whether the trial court erred in granting defendant’s petition; (2) whether this court may exercise its appellate jurisdiction over the issue of whether the trial court erred in granting defendant’s motion to suppress; and (3) whether the trial court erred in granting defendant’s motion to suppress.

The following facts are taken from the record on appeal.  At the hearing on the petition and the motion to suppress, defendant testified that on the evening of January 26, 1999, she was driving a 1992 Grand Am through Polo, Illinois.  She was alone in the car. Defendant drove through Polo’s downtown and was heading eastbound on Pines Road.  She stated that she was vaguely familiar with that route.  According to defendant the road surface was dry and consisted of two lanes, with a marked center line.  The weather was "extremely windy, cold."  She was driving at 55 miles per hour.

At approximately 9:13 p.m., defendant was located about five to eight miles east of Polo.  (Defendant's testimony as to the time of the subject incident conflicts with that of the arresting officer, who stated that it occurred at 7:13 p.m.)  Farmland was on each side of the road.  She drove up behind a semi-trailer truck (truck) that, in her estimation, was traveling at 50 miles per hour.  Defendant stated that she slowed down and "weaved" over several times to look around the truck in preparation to pass it.  She saw the overhead lights of a police vehicle and pulled over on the shoulder.  The arresting officer told her that he pulled her over because she was following too close to the truck.  She estimated that she had maintained a distance of two to three car lengths behind the truck.  On cross-examination, defendant denied that, if she were a "good distance back" of the truck, she would be able to look around the truck without having to pull over to the edge of the lane.  Defendant further denied ever driving to the right side of the lane to look around the truck.  She further stated that she did not have her turn signal on because she was not ready to pass the truck.  Defendant reiterated that she "went to the left part of [her] lane on three separate occasions."  She testified that she was not sure whether the portion of the road in which she was traveling behind the truck was a no-passing zone. Further, defendant thought that she had told the arresting officer that she was intending to pass the truck.

Kevin Culloton testified that he was a deputy sheriff in the Ogle County sheriff’s department.  He stated that at approximately 7:13 p.m. on the evening of January 26, 1999, he was on duty and traveling westbound on Pines Road.  Deputy Culloton passed the subject truck and the defendant’s car going in the opposite (eastbound) direction.  He thought defendant’s car was "way too close" to the rear bumper of the truck.  He estimated the distance to be 20 feet.  Deputy Culloton turned his vehicle around and, traveling eastbound on Pines Road, drove up behind defendant.  He did not immediately activate the overhead lights.  Rather, he observed defendant’s car and saw it "weave back and forth within its own lane."  Deputy Culloton estimated that defendant’s vehicle came within three to six inches of the center line and the "fog line" on the right side of the lane.  He further estimated that it was traveling at between 50 and 55 miles an hour.  According to Deputy Culloton, the area in which the three vehicles were traveling was a no-passing zone.  During this time, he observed no turn signal on defendant’s vehicle.  Shortly thereafter, Deputy Culloton activated his overhead lights, and defendant pulled over. According to Deputy Culloton, the stop occurred at a point at which a passing zone began.  He testified that at no time during the traffic stop did defendant indicate to him that she was attempting to pass the truck.

In ruling for defendant, the trial court stated:

"I think in this particular case the defendant’s arguments are well-taken.  I think 11-703 and 11-705 dictate that Miss Manders has to do what she was doing.  She didn’t begin a pass in a no-passing zone.  I’ll find that there was no probable cause as to make this stop as in this particular fact situation and grant the motion to suppress and the petition to rescind."

We first address the arguments related to the order granting defendant’s petition.  Initially, the State maintains that the trial court commingled the question of whether defendant was properly preparing to pass the truck with the "real issue at hand," namely, whether defendant was traveling too closely behind the truck.  The State further argues that, based on Deputy Culloton’s observations, he would have been remiss in his duties had he not further investigated "what appeared to represent a traffic violation."  In response, defendant contends that the order granting the petition was not against the manifest weight of the evidence and should be affirmed.

The determination of the witnesses' credibility, of the weight to be given the witnesses’ testimony, and of the reasonable inferences to be drawn from the evidence is the responsibility of the trial court, as is the resolution of conflicts in the evidence.  See 
People v. Fortney
, 297 Ill. App. 3d 79, 85-86 (1998).  A reviewing court should not disturb a trial court’s decision regarding a petition unless the decision is against the manifest weight of the evidence. 
People v. Smith
, 172 Ill. 2d 289, 294-95 (1996).

Initially, we note that the vast majority of the testimony at the hearing dealt with the allegations that defendant was weaving in her lane.  Specifically, Deputy Culloton stated that, when traveling in the opposite direction of defendant’s vehicle and the truck, he noticed that defendant appeared to be traveling too close to the truck.  He then testified that he turned around and followed the two vehicles.  Subsequently, Deputy Culloton’s testimony only relates to the alleged weaving of defendant’s vehicle.  With no more evidence regarding the allegations of following too close, we determine that the trial court properly concluded that the evidence did not support an investigatory stop by Deputy Culloton based on defendant’s following the truck too closely.

We next address the allegation that defendant’s vehicle was weaving prior to the stop.  During Deputy Culloton’s testimony, he characterized defendant’s driving within her lane of traffic as "weaving."  Section 11--709(a) of the Code (625 ILCS 5/11--709(a) (West 1998)) recognizes that a vehicle cannot be driven in a perfectly straight line.  It states, "A vehicle shall be driven 
as nearly as practicable
 entirely within a single lane ***."  (Emphasis added.)  625 ILCS 5/11--709(a) (West 1998).

Moreover, "weaving" has been defined as "the action of a vehicle that alternately diverges from and merges into traffic flows moving in the same direction, 
shifting from one lane to another
, and repeatedly crossing the paths of other vehicles."  (Emphasis added.)  Webster’s Third New International Dictionary 2591 (1986). Deputy Culloton clearly testified that defendant’s vehicle did not cross the yellow line on her left or the white line on her right. Given the definition above, such conduct cannot be termed weaving and cannot be the basis of a valid investigatory stop.

We find that there was no valid basis for Deputy Culloton’s stop of defendant’s vehicle.  Accordingly, we conclude that the trial court’s granting of the petition was not against the manifest weight of the evidence.

Next, we address the State’s contention that the trial court erred in granting defendant’s motion to suppress evidence.  The State essentially reiterates the arguments made regarding the granting of the petition.  It then adds that this court may exercise its jurisdiction over the issue of the suppression of evidence, despite the fact that the State's initial notice of appeal only stated that it was appealing the granting of the petition.  In response, defendant first maintains that this court does not have jurisdiction over the suppression-of-evidence issue.  She then argues that the evidence clearly supports the trial court’s decision to grant the motion to suppress.

Regarding the issue of jurisdiction, the State specifically argues that the record and the "actions of the parties" clearly demonstrate that both motions were meant to be addressed by this court.  The State further maintains that its failure to include the issue of the granting of the motion to suppress was merely a clerical error and that it would place form over substance to find that this court does not have jurisdiction over this issue.  The State also argues that the case law holds that notices of appeal are to be liberally construed and that an unspecified judgment is reviewable if it is a step in the procedural progression leading to the judgment specified in the notice of appeal.  Additionally, the State contends that the petition and the motion to suppress are so "intertwined" that this court should accept jurisdiction.  In response, defendant contends that the petition and the motion to suppress arose in separate proceedings, civil and criminal, respectively, and that these require differing analyses of appellate jurisdiction.  Defendant argues that, while the State had the right to take an interlocutory appeal from the granting of the motion to suppress, it did not file the required notice of appeal within 30 days of the order’s entry.  Defendant also asserts that the State failed to move this court for leave to file a late notice of appeal, pursuant to Supreme Court Rule 606 (134 Ill. 2d R. 606).

The record contains the following facts.  The orders granting both the petition and the motion to suppress evidence were filed on July 19, 1999.  On July 21, 1999, the State filed a notice of appeal that stated in pertinent part, "If appeal is not from a conviction, nature of order appealed from: Order rescinding statutory summary suspension."  On November 22, 1999, the State filed a motion to amend the notice of appeal, wherein the State acknowledged that "[t]he previous notice of appeal does not indicate that the appeal also is taken from the order granting the defendant’s motion to suppress and such omission was in error." Accordingly, the amended notice of appeal listed both the order rescinding statutory summary suspension and the order granting the motion to suppress as orders from which the State was appealing.

In 
People v. O’Connor
, 313 Ill. App. 3d 134 (2000), this court faced a similar circumstance.  The defendant, Richard O’Connor, was charged with driving under the influence of alcohol and improper lane usage.  He filed a petition, arguing that the breathalyzer used to measure his blood-alcohol concentration was improperly certified.  The trial court denied both the petition and a subsequent motion to suppress the breathalyzer evidence.  After a stipulated bench trial, the defendant was apparently convicted of both charges and sentenced to one year’s conditional discharge. The defendant’s notice of appeal indicated that he was appealing the December 28, 1998, order that resulted in convictions of improper lane usage and DUI.  In the defendant’s brief before this court, he raised issues only related to the denial of his petition.  The State argued that this court lacked jurisdiction over the appeal because the defendant did not challenge the order denying his petition in his notice of appeal.

Noting that this issue was one of first impression in Illinois, the 
O’Connor
 court looked for guidance to an Ohio opinion, 
Ohio Bureau of Motor Vehicles v. Williams
, 97 Ohio App. 3d 779, 647 N.E.2d 562 (1994).  In 
Williams
, the defendant’s driver’s license was suspended because he refused to take a chemical test to determine his blood-alcohol level.  The defendant appealed the administrative suspension to the trial court, arguing that his license should not have been suspended for refusing to take a chemical test to determine his blood-alcohol level.  The trial court denied his appeal of the suspension, and the defendant did not file a notice of appeal within 30 days of this decision.  Later, the defendant was found not guilty of DUI by a jury.  Thirty days after the not guilty verdict, the defendant filed a notice of appeal challenging the trial court’s denial of his appeal of the administrative license suspension.  The 
Williams
 court found, 
inter
 
alia
, that the administrative suspension of a driver’s license affected a substantial right and that the review of an administrative license suspension is an independent judicial proceeding separate from the criminal charge of DUI.  
Williams
, 97 Ohio App. 3d at 781, 647 N.E.2d at 563.  Further, the 
Williams
 court determined that the order denying the appeal of the license suspension was a final and appealable order. The 
Williams
 court concluded that the defendant’s failure to file a notice of appeal within 30 days of the denial of the appeal of the license suspension removed the defendant’s appeal from its jurisdiction.

The 
O’Connor
 court found the analysis in 
Williams
 applicable to analogous provisions of Illinois appellate procedure.  The 
O’Connor
 court concluded that the trial court’s order denying a petition is a final order that disposes of a separate and distinct proceeding from the criminal action arising from the DUI and must be appealed within the 30-day time limit of Supreme Court Rule 303(a)(1) (155 Ill. 2d R. 303(a)(1)).  The 
O’Connor
 court, noting that the notice of appeal was filed well outside the 30-day time limit, found that it lacked jurisdiction to consider the  trial court’s denial of the petition.  
O'Connor
, 313 Ill. App. 3d at 136.

O’Connor
 establishes that the civil action involving a petition and the action related to a criminal charge of DUI are separate actions that are governed by separate rules of appellate procedure.  Regarding the appeal of a denial of a petition, 
O’Connor
 holds that, pursuant to Supreme Court Rule 303(a)(1) (155 Ill. 2d R. 303(a)(1)), the notice of appeal has to be filed within the 30-day period following entry of the order.  
O'Connor
, 313 Ill. App. 3d at 136.

O’Connor
 is silent regarding the applicable procedure in the appeal of an order granting a motion to suppress.  Generally, an order suppressing evidence is an appealable order.  
People v. Neziroski
, 102 Ill. App. 3d 720, 723 (1981).  If the order is not appealed, the doctrine of collateral estoppel bars relitigation before another judge in the same or another trial absent a showing of peculiar circumstances or some additional evidence to be presented.  
Neziroski
, 102 Ill. App. 3d at 723.  Further, Supreme Court Rule 606 (134 Ill. 2d R. 606) requires that a notice of appeal in criminal cases must be filed within 30 days from the entry of the judgment or order appealed from.  
Neziroski
, 102 Ill. App. 3d at 722.  Thus, following the entry of an order granting a motion to suppress, the State has to file a notice of appeal within 30 days of the entry of the order.

Here, the record demonstrates that the State failed to make a timely appeal from the granting of the motion to suppress, which had to be filed within the 30-day period following the July 19, 1999, order.  Instead, the State filed an amended notice of appeal approximately 120 days after the order’s entry.  The State’s argument that the failure to file within the 30-day period was merely a clerical error is not well taken.  The record contains no indication that the failure to include the issue of the granting of the motion to suppress was indeed a clerical error.  Moreover, we are unpersuaded by the State’s assertion that the pertinent supreme court rules should be liberally construed and that a failure to do so would place form over substance.  The "substance" of Supreme Court Rule 606 is very clear, 
i.e.
, to perfect an appeal from an order granting a motion to suppress, the State has to file a notice of appeal within the 30-day period following entry of the order.  134 Ill. 2d R. 606.  Further, contrary to the State’s position, the subject actions were not so intertwined that there was no need for a separate notice of appeal.  Rather, as 
O’Connor
 establishes, these are separate actions that are governed by different appellate rules.  Finally, the only case cited by the State in support of its argument is 
In re Adoption of S.J.M.
, 245 Ill. App. 3d 277 (1993).  Pursuant to a court order entered November 9, 1993, however, the opinion was withdrawn and was then filed as a nonprecedential Rule 23 order. 245 Ill. App. 3d 277 (1993).

We conclude that the State’s failure to file a timely notice of appeal specifically stating that it was appealing the granting of the motion to suppress deprives this court of jurisdiction over that portion of the appeal at bar.

For the reasons stated above, we affirm the judgment of the circuit court of Ogle County granting the petition to rescind the statutory summary suspension and dismiss for lack of jurisdiction that part of the appeal dealing with the granting of the motion to suppress.

Affirmed in part and dismissed in part.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE BOWMAN, dissenting:

I respectfully dissent from the majority's decision that Deputy Culloton was not justified in making an investigatory stop of defendant.

A police officer may make an investigatory stop if, based on all the facts and circumstances, he has a reasonable and articulable suspicion that the suspect is committing, has committed, or is about to commit a crime.  
People v. Lockett
, 311 Ill. App. 3d 661, 667 (2000).  To justify such detention, an officer must be able to point to specific articulable facts that, when taken together with natural inferences, make the intrusion reasonable--such as when the officer observes unusual conduct that leads him reasonably to conclude in the light of his experience that criminal activity may be afoot.  
People v. Ertl
, 292 Ill. App. 3d 863, 868 (1997).

Deputy Culloton, a three-year veteran of the Ogle County sheriff's department, testified that he first observed defendant's car following a semi-trailer truck "way too close" to the rear bumper of the truck.  When the officer drove up behind defendant's car, he saw it "weave back and forth within its own lane." Defendant was traveling within a no-passing zone at the time and had not activated her turn signal.  The officer estimated defendant's speed at between 50 and 55 miles per hour.  The officer pulled over the defendant.

The majority relies on a dictionary definition of "weaving" to determine that defendant's conduct of driving back and forth within three to six inches of the center line and the "fog line," as testified to by the officer, did not constitute weaving.  According to the majority's definition, weaving only occurs if a vehicle shifts from one lane to another.  As defendant's vehicle did not cross out of her lane, the majority concludes that she was not weaving.

The majority also relies on the language of section 11--709(a) of the Illinois Vehicle Code (625 ILCS 5/11--709(a) (West 1998)) as support for its conclusion that defendant's conduct did not constitute weaving.  Section 11--709(a) states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane."  625 ILCS 5/11--709(a) (West 1998).  According to the majority, this section recognizes that a "vehicle cannot be driven in a perfectly straight line."  Slip op. at 7.  Apparently, the majority is implying that, although defendant was not driving in a straight line at the time she was observed by the officer, she was driving "as nearly as practicable" within her lane.

It is well established that weaving in the lane of traffic within which a vehicle is traveling provides a sufficient basis for an investigatory stop of the vehicle. See, 
e.g.
, 
People v. Albright
, 251 Ill. App. 3d 341, 343 (1993); 
People v. Diaz
, 247 Ill. App. 3d 625, 627 (1993); 
People v. Loucks
, 135 Ill. App. 3d 530, 533 (1985).  Here, the evidence was undisputed that defendant was weaving in her lane.  Deputy Culloton testified that he observed defendant's vehicle weave back and forth within its lane, and defendant admitted that she weaved to the left part of her lane on three separate occasions.  The evidence was also undisputed that defendant did not have her turn signal on at the time.  Thus, defendant's vehicle as observed by Deputy Culloton was not being driven "as nearly as practicable" within a single lane because it was weaving within the lane and, as noted above, weaving within a single lane is sufficient to justify a stop.  Defendant's erratic driving provided Deputy Culloton with articulable facts that showed there was a substantial possibility that defendant was committing a traffic violation.  As there was a valid basis for the officer's stop of defendant's vehicle, I would reverse the trial court's order granting defendant's petition for rescission of the statutory summary suspension of her driving privileges.