THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JACK L. PHILLIPS, Defendant-Appellee.

Third District    No. 3—01—0530

Opinion filed March 22, 2002.

Gary L. Spencer, State's Attorney, of Morrison (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE HOMER delivered the opinion of the court:

Following a traffic stop, the defendant, Jack L. Phillips, was arrested for obstructing justice by furnishing false information to a police officer (720 ILCS 5/31—4 (West 2000)) and the unlawful possession of more than 2.5 grams, but not more than 10 grams, of cannabis (720 ILCS 550/4(b) (West 2000)). His motion to quash the arrest and suppress the evidence was granted on the grounds that the officer did not have reasonable grounds to make the traffic stop. On appeal, the State argues that the trial court erred by granting the motion because

the police officer had reasonable grounds to stop the defendant. We affirm.

## BACKGROUND

The witnesses at the hearing on the motion to quash and suppress were the arresting officer and the defendant. Illinois State Trooper Clint Thulen testified that at about 10 a.m. on March 8, 2001, he was parked in his patrol car in a "crossover" of Interstate 88 (I-88) monitoring traffic coming from both directions. He said that the traffic was moderate at that time.

Thulen stated that he noticed the defendant's car, which was traveling eastbound, because it displayed a "registration applied for" sticker. The officer testified that the sticker appeared to be faded. Thulen wanted to examine the sticker more closely to learn if it had been counterfeited or altered.

Thulen said that when the defendant's car passed the crossover, it was following a semitruck, which was "some distance ahead" of the defendant's car. He acknowledged that when the defendant's vehicle passed his location, the car was a safe distance behind the truck.

The officer pulled his patrol car out of the crossover and onto the left of the two eastbound lanes. He accelerated so that he could better examine the sticker in the defendant's rear window. He stated that it took him approximately three-fourths of a mile to a mile to catch up to the defendant's car.

The defendant testified that he was in "the fast lane" when he drove past the officer's location because he was in the process of passing a truck. The defendant said he saw that the officer's car "hurried" just after the defendant's car got past the truck. He stated that he was starting to catch up to a second truck that was in the right lane to pass it when he saw the officer's vehicle approach rapidly from the rear.

Thulen stated that he did not recall seeing two trucks, only the truck in front of the defendant's vehicle. The officer said that he did not activate his overhead lights immediately, but first got close enough to the defendant's vehicle so that he could more closely examine the sticker.

The defendant testified that the officer's vehicle was "flying up on" his vehicle, so he moved into "the slow lane." He said that he was going to let the officer's vehicle pass because "maybe [the officer] had a call or something."

The defendant stated that when he got into the right lane, he was between two trucks. He said that after he got into the right lane, the officer's car pulled up in the left lane near the rear of his car. Thulen

stated that when he caught up to the defendant's car while the patrol car was in the left lane, the officer could estimate that the defendant's car was about two car lengths behind the truck. The officer testified that in his opinion being two car lengths behind another vehicle at the legal speed limit on the interstate was not a reasonable and prudent distance to be following another vehicle. The officer stated that traveling that close to another vehicle violated the "rule of thumb" that a vehicle should not be closer than three seconds in time behind another vehicle. The defendant, however, said that he was not as close as two car lengths behind the truck.

The defendant testified that as the officer's vehicle approached from the rear, the truck in front of the defendant's vehicle slowed down, the defendant slowed down, and then the officer's vehicle slowed down and got behind the defendant's vehicle in the right lane, but in front of the trailing truck. According to both the defendant and the officer, the defendant then turned on his left turn signal. The defendant testified that he turned his left turn signal on because he was going to pass the truck after the patrol car was behind his car in the right lane.

Thulen acknowledged that when he approached the defendant's car in the left lane, the defendant moved into the right lane, and it would have been unsafe for the defendant to have moved back into the left lane to pass the truck because the officer's vehicle was traveling faster than the defendant's vehicle. The officer testified that the defendant, however, should not have pulled within two car lengths of the truck in front of him. He said that the defendant could have slowed down to avoid following the truck too closely.

Both the defendant and the officer stated that at this point, the officer activated his overhead lights. Thulen said that the video camera in his patrol car is automatically activated when the overhead lights are turned on. The officer testified that he was going to pull the defendant over because the defendant was following the truck at an unsafe distance and to further investigate the "registration applied for" sticker.

The videotape was played during testimony and is part of the record. The tape shows the defendant's car following a semitruck. The tape indicates that after the defendant's and the officer's cars pulled onto the shoulder, the truck in front of the defendant's car continued on the interstate. The tape then shows another truck pass the squad car and the defendant's car.

Thulen testified that after he pulled the defendant's vehicle over, he approached the defendant's car and asked the driver his name and date of birth. The defendant gave the officer an incorrect name and date of birth. The officer then noticed what appeared to be some

marijuana sprinkled on the front of the defendant's shirt. He asked the defendant to step out of the car. Thulen then began to pat down the defendant, who told the officer that the marijuana on his shirt was from a "blunt" of marijuana that he had just thrown out of the car. The defendant then also told the officer his correct name. Subsequently, the officer learned that there was an outstanding warrant for the defendant's arrest for driving while his license was suspended. Later, the officer determined that the "registration applied for" sticker was valid. A black and white photograph of the sticker was offered in evidence at the hearing.

At the conclusion of the hearing on the motion to quash and suppress, the trial judge said that he could not tell from the black and white photograph if the background of the "registration applied for" sticker was faded. The judge stated that the black numbers and letters of the sticker did not appear to be faded in the photograph.

The judge said that when the officer's squad car approached the defendant's vehicle and the truck in front of the defendant, all of the vehicles began to slow down. He noted that slowing down was a common reaction by anyone driving on an interstate highway who sees a state trooper. The judge stated that the defendant was put in the position that if he pulled back into the left lane, he would cut the officer off. On the other hand, the judge observed, the defendant's other choice was to stay in the right lane, but the truck slowed down and the trooper slowed down at the same time as the defendant slowed down.

The judge then stated the following:

"I think here the driving by Mr. Phillips and the maneuver that he conducted was strictly because of the actions of the police officer. He may at some point [sic] been more closely behind the truck in front of them than was prudent or reasonable, although from my examination of the videotape it appears as though at the time the lights first came on the police officer was approximately the same distance behind the car as the car was behind the truck. That may have just again been the result of the various slowing downs that were taking place at that point.

In any case I don't think that the stop here was justified by the driving and behavior of Mr. Phillips at the time prior to the stop. ***

I show that the stop was not justified, the Motion to Quash the Arrest and Suppress Evidence is allowed."

In the court's order, the judge wrote the following:

"This case presents a unique situation where there would have been no violation at all except for the actions of the trooper. *** After accelerating to catch up with the defendant, the trooper placed

his vehicle to the left rear of the defendant's vehicle and then slowed, effectively trapping the defendant in the right lane as the defendant came up behind a truck. Then, as the defendant and the truck both slowed because of the presence of the officer, the trooper decided that the defendant did not slow quickly enough to be reasonable and prudent and was therefore, following the truck too closely.

*** The court *** finds that based upon the facts of this case the trooper was in error in deciding that the defendant had followed another vehicle more closely than was reasonable and prudent. *** Therefore, there was no legal justification for the stop of the defendant and any evidence obtained as a result of the stop is suppressed."

It is from this final judgment that the State appeals.

## ANALYSIS

■ When the trial court's ruling on a motion to quash arrest and suppress evidence involves factual determinations and credibility assessments, it will be reversed on appeal only when manifestly erroneous. *People v. Buss*, 187 Ill. 2d 144, 718 N.E.2d 1 (1999). Because the trial court's ruling in this case involved factual determinations and credibility assessments, we apply the manifestly erroneous standard of review.

■■ Individuals have the right to be secure against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A police officer may stop and temporarily detain an individual for a limited investigation if the officer can point to specific and articulable facts which, taken together with reasonable inferences drawn from the officer's experience, lead the officer reasonably to conclude that the individual has committed a crime. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); 725 ILCS 5/107—14 (West 2000). A driver shall not follow another vehicle more closely than is reasonable and prudent, having regard for the speed of the vehicles, the traffic on the highway, and the condition of the highway. 625 ILCS 5/11—710(a) (West 2000).

On appeal, the State argues that the judge's ruling granting the defendant's motion to quash arrest and suppress evidence was against the manifest weight of the evidence. The State asserts that the officer had reasonable and articulable grounds to stop the defendant for the traffic violation of following another vehicle too closely. The State also argues that the judge erred by applying the higher standards required to arrest or convict the defendant of the traffic infraction rather than the lower standard that may justify a *Terry* stop. We disagree with these contentions.

■ The trial judge ruled that the officer "was in error in deciding that the defendant had followed another vehicle more closely than was reasonable and prudent." Although the judge did not use terms of art from *Terry*, it is clear from his ruling that he concluded that the officer had failed to point to specific and articulable facts which, taken together with reasonable inferences, led the officer reasonably to conclude that the defendant had committed a crime. See *Terry* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

In his oral ruling, the trial judge opined that he did not think that the stop was justified by the driving and behavior of the defendant. Under the facts of this case, it was not against the manifest weight of the evidence for the judge to have concluded that any noncompliance with the traffic laws resulted from the actions of the officer. Accordingly, we hold that the trial court did not err in allowing the defendant's motion to quash arrest and suppress the evidence.

## CONCLUSION

For the foregoing reasons, we affirm the ruling of the circuit court of Whiteside County.

Affirmed.

LYTTON, P.J., and McDADE, J., concur.