# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2003

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GREGORY D. ROBINSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 CR 20035—**Michael P. McCuskey**, *Judge.*

ARGUED NOVEMBER 14, 2002—DECIDED JANUARY 3, 2003

Before RIPPLE, ROVNER and DIANE P. WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Gregory Robinson pleaded guilty to possessing with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). Mr. Robinson's conditional plea agreement reserved his right to appeal the denial of his motion to suppress evidence, and he now argues that the district court erred by determining that the arresting officer had probable cause to stop the car in which he was traveling. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

At about 7:15 in the evening on April 20, 2001, Richard Shutter, the police chief of Bethany, Illinois (pop. 1,287), was backing up another officer during a traffic stop near the intersection of Route 121 and Church St. The Chief, who had served in positions in corrections and then in law enforcement, after a labor dispute had cost him his earlier position in private industry, was sitting in his car on Church St., facing the intersection. To his right, Route 121 curved gradually out of view behind a stand of trees. Chief Shutter observed a small tan car come around this bend. Following this vehicle was a purple Buick with a driver and one passenger. The Chief estimated that both cars were traveling about 30 to 35 miles per hour ("mph"). Chief Shutter pulled his car onto the road behind the purple Buick and followed it through the rest of Bethany, a five-block ride lasting about thirty seconds. The driver of the Buick committed no traffic violations while the Chief followed; nor did any of the occupants do anything suspicious. On the west side of Bethany, the Chief stopped the Buick for "following too closely" behind the tan car, in violation of 625 ILCS 5/11-710(a).[1] The driver consented to a search of the car; that search revealed some marijuana stuffed between the seats and 751 grams of crack cocaine in a nylon bag behind the passenger seat.

The Government charged Mr. Robinson, who had been the Buick's passenger and who had claimed ownership

---

[1] "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." 625 ILCS 5/11-710(a).

of the crack, with one count of possessing with intent to distribute crack cocaine. Mr. Robinson filed a motion to suppress that, among other issues subsequently waived, contested the legality of the traffic stop.

Chief Shutter was the only witness at the hearing on the motion to suppress. On direct examination, the Chief testified that he had stopped the Buick because, as it came around the bend, he had observed that it was following the tan car by eight to ten feet (approximately half a car length). In the Chief's opinion, an eight- to ten-foot distance between two cars traveling at about 35 miles per hour was "too close" for that stretch of Route 121. He noted that the route had three nearby access roads and that it was usually busy at that time of evening. The Chief further explained that he had waited until the Buick reached the far side of town before stopping it because, throughout Bethany, there are curbs that prevent cars from pulling completely off the road and he did not want to block traffic. On cross-examination, the Chief admitted that, as one enters Bethany on Route 121, the posted speed limit descends from 55 mph to 50 mph, and then to 40 mph. He further acknowledged that, directly across from where he had sat in his car, a sign informs drivers that during school hours the speed limit further descends to 20 mph in the school zone. The effect of these descending speed limits, Chief Shutter agreed, was that trailing cars might encroach on leading ones as the leaders slowed along this stretch of road. The Chief further agreed that he had observed the alleged traffic violation for only "one or two seconds" as the Buick and the tan car passed directly in front of his position on Church St.

The district court orally denied the motion to suppress. The court found Chief Shutter a "very credible witness" and reasoned that his testimony made "sense when you

put it in its totality of circumstances." Tr. at 55. The court further concluded that it was "probably not" reasonable or prudent for the purple Buick to have been trailing the tan car by eight to ten feet at 35 mph and that Chief Shutter had specific, articulable facts supporting his on-site determination that there was probable cause to believe that a moving violation had occurred.

## II

## DISCUSSION

Mr. Robinson faces a difficult task in challenging these rulings on appeal. Although we review the district court's probable cause determination de novo, we must defer to that court's findings of historical fact that are not clearly erroneous. *See United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000).

## A.

Mr. Robinson submits that the "facts adduced at the hearing on the motion to suppress belie any credible or reasonable notion that the violation for following too closely . . . ever occurred." Plaintiff's Br. at 12. This argument is essentially an attack on the district court's finding that Chief Shutter was a "very credible" witness who had specific articulable reasons for pulling the Buick over when and where he did. We shall disturb such credibility findings only if the district court has "chosen to credit exceedingly improbable testimony." *See United States v. Dillon*, 150 F.3d 754, 758 (7th Cir. 1998). Although Mr. Robinson discusses eleven facts that he says "militate" against the district court's findings, these facts do not make the Chief's testimony "exceedingly improbable." For

example, Mr. Robinson submits that Chief Shutter's inexperience as a police officer undercuts his credibility. This is an argument that can be made only to the district court. Even an inexperienced officer can determine accurately that a vehicle was following less than ten feet behind another, and the district court was entitled to credit the Chief's testimony. And, even though Chief Shutter testified that he saw the traffic violation for only one or two seconds, the district court was entitled to determine that his observation was sufficient to permit an accurate assessment.

Mr. Robinson intimates Chief Shutter stopped the Buick because its occupants were African American. The Supreme Court has made clear, however, that the subjective motivations of an officer in stopping a vehicle are not relevant to an ordinary probable cause analysis. *See Whren v. United States*, 517 U.S. 806, 813 (1996). *See also Gustafson v. United States*, 414 U.S. 260, 266 (1973); *United States v. Robinson*, 414 U.S. 218 (1973). The evidence of record permitted the district court to determine that Chief Shutter had seen what he claimed to have seen—a purple Buick trailing a tan car closer than was reasonable or prudent for that stretch of road. "We of course agree . . . that the Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren*, 517 U.S. at 813. But in the context of a Fourth Amendment probable cause analysis, the district court was entitled to rely upon the objective facts known to the officer at the time the officer acted.

**B.**

Mr. Robinson also submits that the facts, as the district court found that they were known to Chief Shutter at the

time of the arrest, did not constitute probable cause to believe that the Buick was being operated in violation of the Illinois Vehicle Code's proscription on following more closely than is "reasonable or prudent." In support, he relies upon two Illinois appellate cases that affirmed Illinois trial courts' decisions to suppress evidence on the ground that an officer did not have probable cause to stop a motorist for following too closely. *See People v. Phillips*, 767 N.E.2d 842 (Ill. App. Ct. 2002); *People v. Manders*, 740 N.E.2d 64 (Ill. App. Ct. 2000). In *Phillips*, the trial court found that a police cruiser's rapid approach from the rear caused the defendant to pull his car into another lane behind a truck. The truck slowed, the defendant's car encroached, and the officer in his cruiser stopped the defendant for following too closely. The trial court suppressed evidence found in a subsequent search because the officer's rapid approach forced the defendant into the traffic violation. *See Phillips*, 740 N.E.2d at 845-46. The appellate court affirmed the trial court's determination. *Id.* In *Manders*, the court affirmed without much discussion a trial court's judgment that following either two or three car lengths (defendant's estimate) or 20 feet (officer's estimate) behind a truck at 50 mph was not too close. *Manders*, 740 N.E.2d at 67.

These cases are of no help to Mr. Robinson. First, they are factually distinguishable in significant ways. Officer Shutter did not force the Buick into a traffic violation, and the Buick was closer to the tan car than the car in *Manders* was to the truck. More importantly, in each case, the appellate court simply held that the trial courts' probable cause determinations were not "manifestly erroneous." *See Phillips*, 767 N.E.2d at 845-46; *Manders*, 740 N.E.2d at 67.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*